**United States District Court**

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOANNE P. FRAZIER ,

          Plaintiff,

    v.

THE COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

_____/

No. C  05-2355 WDB

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT,
DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION TO
REMAND

**I.    Introduction**

      Plaintiff Joanne Frazier seeks judicial review of a final decision by the Commissioner of Social Security denying her Disability Insurance Benefits under Title II of the Social Security Act.  On November 21, 2005, plaintiff moved for summary judgment. Defendant JoAnne B. Barnhart, in her capacity as Commissioner of Social Security, opposed plaintiff's motion and filed a cross-motion for summary judgment on December 22, 2005.  Plaintiff replied on January 19, 2006.  The matter was then deemed submitted for decision by this court without oral argument, pursuant to Civil Local Rule 16-5.  After careful review and consideration of the record and the papers submitted, the Court hereby grants defendant's motion for summary

1

judgment, denies plaintiff's motion for summary judgment, and denies plaintiff's motion for remand.

## II.    Procedural Background

Plaintiff applied for disability insurance benefits on November 4, 2002, alleging that back pain had rendered her disabled since December 11, 2001.  Her request was denied initially and on reconsideration.  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  On February 11, 2004, that hearing was held before the Honorable Richard P. Laverdure.  Ms. Frazier testified at the hearing and was accompanied by her legal counsel, Mr. William Galvin.  Robert Raschke, M.S., a vocational expert, also appeared and testified at the hearing. On March 16, 2004, Judge Laverdure issued his written decision.   Judge Laverdure found that, although plaintiff was unable to perform her past relevant work, she was not disabled within the meaning of the Social Security Act.  He therefore denied her request for disability benefits.

Plaintiff then appealed to the Social Security Administration's Appeals Council, which determined that there was no basis for review.  On October 15, 2004, Judge Laverdure's decision became the final decision of the Commissioner of Social Security in plaintiff's case.[1]  On June 9, 2005, plaintiff filed a complaint in federal court seeking review of Judge Laverdure's decision.  Both parties have consented in writing to proceed before the undersigned United States Magistrate Judge.

///

///

---

[1]
    Between October 15, 2004, and June 9, 2005, plaintiff applied for, and received, numerous extensions of time in which to file her federal Complaint.

1   **III.   Standard of Review**

2       The district court may set aside the Commissioner's denial of disability

3   insurance benefits only when the ALJ's findings are based on legal error or are not

4   supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g);

5   Tackett v. Apfel, 180 F.3d 1094, 1097-98 (9th Cir. 1999) (citations omitted).

6   "Substantial evidence" means more than a scintilla but less than a preponderance; it

7   is such evidence that a reasonable mind might accept as adequate to support a

8   conclusion. Richardson v. Perales, 402 U.S. 389 (1971); Meanel v. Apfel, 172 F.3d

9   1111, 1113 (9th Cir. 1999).  "If the evidence can support either outcome, the court

10  may not substitute its judgment for that of the ALJ."  Tackett, 180 F.3d at 1098,

11  quoting Matney v. Sullivan, 981 F.2d 1016, 1018 (9th Cir. 1992).   "But the

12  Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum

13  of supporting evidence."  Id., quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th

14  Cir. 1998).  "Rather, a court must 'consider the record as a whole, weighing both

15  evidence that supports and evidence that detracts from the Secretary's conclusion."

16  Id., quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

17

18  **IV.   Discussion**

19       A.   Applicable Law -- Steps To Determining Disability

20       A Social Security claimant is considered disabled if (1) she suffers from a

21  "medically determinable physical or mental impairment which can be expected to

22  result in death or which has lasted or can be expected to last for a continuous period

23  of not less than twelve months," and (2) the "impairment or impairments are of such

24  severity that [s]he is not only unable to do [her] previous work but cannot,

25  considering [her] age, education, and work experience, engage in any other kind of

26  substantial gainful work which exists in the national economy."   42 U.S.C. §

27  423(d)(1)(A), (2)(A).

28

The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520. First, the claimant must not be presently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant's impairment must be "severe." 20 C.F.R. § 404.1520(a)(4)(ii). Third, when the claimant has an impairment that both (1) meets the duration requirement and (2) is listed in Appendix 1 (impairments listed in subpart P of part 404 of 20 C.F.R., which are presumed severe enough to preclude work ), or is equal to a listed impairment, benefits are awarded without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, if the claimant's impairments do not meet or equal a listed impairment, all relevant medical and other evidence in the claimant's case record is assessed and findings are made to determine the residual functional capacity[2] of the claimant in order to evaluate whether the claimant can do his or her past work. 20 C.F.R. § 404.1560(a)(4)(iv). Fifth, if the claimant cannot continue with her past work, the ALJ must determine whether the claimant is able to do any other type of work. 20 C.F.R. § 404.1560(a)(4)(v). If the ALJ finds against the claimant at any step along the way, the claimant is not "disabled" and there is no need to continue subsequent steps of the analysis.

To establish a disability claim, the claimant bears the initial burden of proof to show that he or she is unable to perform his or her past relevant work. If met, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education and work experience. Howard v. Heckler,

---

[2]

  Residual functional capacity is the most an individual can do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

782 F.2d 1484, 1486 (9th Cir. 1986); <u>Pinto v. Massanari</u>, 249 F.3d 840, 844 (9th Cir. 2001).

        B.     The ALJ's Decision -- Application of the Five-Step Process

In the first step of the five-step evaluative process, Judge Laverdure found that plaintiff had not performed substantial gainful activity since December 11, 2001, the alleged onset date of her disability. He then found that she had 'severe impairments' that arose from degenerative disk disease of the lumbar spine at L3-4 and L4-5 with left lower extremity radiculopathy and some secondary depression. Upon finding that plaintiff's impairments did not meet or equal any of the "listed impairments", Judge Laverdure proceeded, as required, to determine plaintiff's Residual Functional Capacity (RFC). He found that plaintiff had an "RFC for a range of work at the light exertional level with the need for a sit-stand option 'at will', the ability to lift/carry up to 10 pounds frequently and up to 20 pounds occasionally, the ability to occasionally balance, stoop, kneel, crouch and crawl and preclusion from working on heights (ladders, ropes, or scaffolds)." ALJ Decision, p. 5; Administrative Transcript ("AT"), p. 39. As evidence to support his findings, Judge Laverdure relied on a comprehensive orthopedic evaluation by Dr. Holly Kelly, the RFC assessment of state agency medical advisors, and, to a lesser extent, the provisional opinions of examining orthopedic surgeon Ramsey and neurologic QME Abeliuk. He also relied on plaintiff's own testimony about the extent and nature of her activities of daily living.

Judge Laverdure found that plaintiff's testimony was generally credible but that her allegation that she could not perform any work was inconsistent with the medical evidence and opinions supporting an RFC for a range of work at the light exertional level and with her own account of her activities of daily living. Judge Laverdure also found that plaintiff "perceived the issue of disability in the context of the ability to perform her past work as a grocery clerk." ALJ Decision, p. 4; AT, p. 38. He further

noted that plaintiff originally alleged that her low back pain and radiculpathy were not work-related, but later claimed that these symptoms were exacerbated by a December 2001 slip and fall at her job.

Proceeding to steps four and five, Judge Laverdure found -- with the aid of testimony from a vocational expert, Mr. Raschke – that given her RFC, plaintiff was unable to perform her past relevant work as a produce stocker or grocery clerk. Judge Laverdure then asked plaintiff's counsel to stipulate that there would be a significant number of other jobs in the national economy that an individual with the RFC described above could perform. Plaintiff's counsel agreed to so stipulate, and Judge Laverdure thereupon found that defendant Commissioner had met her burden of proof with respect to step five. Based on this finding, Judge Laverdure found that plaintiff was not disabled within the meaning of the Social Security Act.

C.      Review of the ALJ's Decision

The primary issues raised by plaintiff are (1) whether a new report from one of her doctors warrants a remand for further administrative proceedings; (2) whether substantial evidence exists to support the Administrative Law Judge's finding that plaintiff had a Residual Functional Capacity for work at the light exertional level with certain postural and height limitations; and (3) whether the Administrative Law Judge's finding at step five -- that a significant number of other jobs existed in the national economy that she could perform -- was properly reached.

1.      Does the September 27, 2004, Report by Orthopedic Surgeon James Zucherman Warrant A Remand of Plaintiff's Case for Further Administrative Proceedings?

Plaintiff first argues that her case should be remanded to the Commissioner of Social Security for the consideration of new evidence. Plaintiff's new evidence consists of a September 27, 2004, report from orthopedic surgeon James Zucherman. See Attachment to Plaintiff's Motion and Notice of Motion for Summary Judgment And/Or Remand, filed November 21, 2005 ("Plaintiff's Motion").

1

### A.    Dr. Zucherman's September 27, 2004 Report

Dr. Zucherman's report documents his consultation with plaintiff on September 27, 2004.  At this consultation, Dr. Zucherman  examined  plaintiff, reviewed her recent MRI results, and evaluated her answers to a pain questionnaire. Dr. Zucherman's report states that plaintiff's MRI scan, "shows a broad based disc herniation at the L3-4 and L4-5" which is "consistent with the findings on plaintiff's discography back in the latter part of 2002."  September 27, 2004, Dr. Zucherman Report, p. 1 ("New Zucherman report").  Dr. Zucherman also noted that plaintiff reported to him that her symptoms had worsened since her last evaluation, and that she had new symptoms in her low back and legs, which "started without apparent cause".  New Zucherman Report, p. 2.

Dr. Zucherman's report recommends that plaintiff undergo arthroplasty surgery. This recommendation was apparently based primarily on the results of plaintiff's new MRI scan, the failure of more conservative care options to alleviate plaintiff's lower back and leg pain, plaintiff's new and worsening symptoms, and Dr. Zucherman's opinion that disc arthroplasty would be preferable to a fusion procedure.

### B.    Statutory Requirements for Remand

Two statutory requirements exist for the remand of an action in light of additional evidence in a disability insurance benefits case:  (1) there must be good cause for failing to include that new evidence in prior proceedings, and (2) the evidence must be new and material.  42 U.S.C. § 405(g); Mayes v. Massanari, 276 F.3d 453, 461 (9th Cir. 2001).

### (i)  Good Cause Requirement

We first address the good cause requirement.  Plaintiff's counsel asserts that there is good cause for his failure to include Dr. Zucherman's report in the record before the Appeals Council.  Defendant's brief does not seriously contest this assertion.

Dr. Zucherman's report is dated approximately eighteen days <u>before</u> the Appeals Council issued an order and notice ending the administrative proceedings. Plaintiff's counsel contends, however, that the report did not come into his possession until after the Council issued its order.  We also note that plaintiff's counsel did send correspondence to the Appeals Council informing them of the report's anticipated existence and implicitly requesting that the Council wait to decide plaintiff's case until it had reviewed the report.  See Correspondence dated August 16, 2004; AT, p. 18 and Correspondence dated September 23, 2004; AT, p. 15.  The Council appears to have either ignored or denied counsel's request.

Given that Dr. Zucherman's report apparently was not in plaintiff's counsel's possession at the time that the Appeals Council issued its decision, and that plaintiff's counsel attempted to ensure its inclusion in the administrative record, we find that plaintiff has shown good cause for her failure to include the report in the administrative proceedings.[3]

(ii) Materiality of Dr. Zucherman's Report

We must now decide whether Dr. Zucherman's report is "new and material" such that remand is warranted.  "To be material under section 405(g), the new evidence must bear 'directly and substantially' on the matter in dispute. [The plaintiff] must additionally demonstrate that there is a 'reasonable possibility' that the new

---

[3]

We note that, after the Appeals Council issued its order, plaintiff's counsel requested additional time in which to file an action in district court.  A Social Security Administration Legal Assistant, who appears to have misapprehended plaintiff's counsel's request, responded by sending correspondence indicating that the Appeals Council would wait to issue a decision until the new evidence had been submitted.  See Correspondence dated May 19, 2005, from Lona Murphy to William Galvin, AT, pp. 7-8; Correspondence dated July 19, 2005, from Lona Murphy to William Galvin, AT, pp. 5-6. To repeat, however, the Council had already issued its decision.

We find that the correspondence of May 19, 2005, and July 19, 2005, was NOT responsive to plaintiff's counsel's  request and therefore does not alter our finding that plaintiff has shown good cause for her failure to present Dr. Zucherman's report to the Appeals Council.

1  evidence would have changed the outcome of the administrative hearing." <u>Mayes v.</u>
2  <u>Massanari</u>, 276 F.3d 453, 462 (9th Cir. 2001) (internal citations omitted).

3      Defendant argues that there is not a 'reasonable possibility' that Dr.
4  Zucherman's report would have changed the ALJ's determination.  Defendant points
5  out that evidence that surgery had been recommended for plaintiff was already in the
6  administrative record.  Defendant also asserts that, "[w]hile Dr. Zucherman's new
7  report may indicate that plaintiff's symptoms have recently worsened, plaintiff has
8  failed to show that the new evidence is material to and probative of her condition **as**
9  **it existed at the relevant time**."  Defendant's Notice, Motion and Memorandum In
10  Support of Cross-Motion for Summary Judgment and in Opposition to Plaintiff's
11  Motion for Summary Judgment, filed December 22, 2005 ("Opposition"), p. 4
12  (emphasis added) (citing 20 C.F.R. § 404.970(b) (**Appeals Council shall consider**
13  **new and material evidence only where it relates to period on or before date of**
14  **Administrative Law Judge's hearing decision**) (emphasis added).)

15      Plaintiff disputes defendant's assertion, claiming that Dr. Zucherman's
16  September 2004 surgery recommendation "does reflect on, affect and effect the
17  retroactive and more informed views of Plaintiff's condition during the period under
18  review."  She argues that this more informed view of her past condition "would
19  require a change in considerations and findings about the severity and permanency
20  of her impairment," Plaintiff's Reply to Defendant's Opposition and Opposition to
21  Defendant's Cross-Motion for Summary Judgment, filed January 19, 2006 ("Reply"),
22  p. 3, which could reasonably cause the ALJ to change his assessment of her Residual
23  Functional Capacity -- and thus the outcome of the administrative hearing.

24      We are more persuaded by defendant's characterization of Dr. Zucherman's new
25  report than by plaintiff's.  Review of the administrative record reveals that the option
26  of arthroplasty surgery had been discussed with plaintiff for close to two years before
27  Dr. Zucherman issued his report in September of 2004.  See, e.g.,  October 1, 2002,

28

Correspondence From Dr. Zucherman to Dr. Pickett ("Whether she decides to go ahead with surgery is elective.  Since there is no right answer as to what people should do in such situations, I told her personally if I was in her shoes and was unable to do a job, I would go ahead and proceed with surgery . . ."); October 14, 2002, Correspondence from Dr. Zucherman to Rolando Gonzales ("The patient recounted her current situation of being unable to work for a year and she has been feeling worse than usual lately.  She still has not formally made a decision as to whether she wishes to pursue surgery; namely, fusion or arthroplasty of L3-4 and L4-5 or consider the IDET procedure.")  We also note that Dr. Zucherman's September, 2004, report characterizes plaintiff's then-recent MRI findings as 'consistent' with the findings from plaintiff's 2002 discography.  In addition, while this report does seem to recommend arthroplasty surgery more emphatically than past reports, it seems to us that the primary emphasis is on the election of arthroplasty surgery over a fusion procedure, rather than the necessity for surgery in the first instance.

Dr. Zucherman's report of September 24, 2004, also notes that plaintiff complained that her symptoms had recently intensified – but for no apparent reason.  Any such intensification of plaintiff's pain or worsening of her condition is irrelevant to our disposition of the request for a remand because it is only evidence about plaintiff's condition at the time the ALJ made his decision that is relevant.  Changes in medical conditions that occurred thereafter might be sufficient to support a new application by plaintiff for benefits, but could not justify a remand.

In sum, because the administrative record before the ALJ clearly reflected that surgery had been recommended to plaintiff, and in light of the consistency of plaintiff's MRI findings with her 2002 discography findings, we cannot find that there is a 'reasonable possibility' that Dr. Zucherman's September, 2004, report recommending that plaintiff undergo surgery would have changed the outcome of

plaintiff's administrative hearing.  We therefore must DENY plaintiff's motion to remand her case for consideration of this report.

2.   Was the Social Security Administration's Determination of Plaintiff's Residual Functional Capacity Unsupported by Substantial Evidence or Otherwise Improperly Reached?

At the heart of plaintiff's case is her assertion that the Social Security Administration improperly overestimated her Residual Functional Capacity.  As explained above, Judge Laverdure essentially found that plaintiff could perform a job that requires only light physical exertion - so long as she could sit or stand at will. Plaintiff claims, however, that she cannot perform even 'light' work because the pain associated with her back condition would cause her to need frequent and unscheduled rest breaks, and that those breaks would render her too unproductive to perform any type of job.

Plaintiff's primary challenge is to the Residual Functional Capacity finding made by Judge Laverdure, although she also challenges the Appeals Council decision upholding that finding.  We first address plaintiff's challenges to Judge Laverdure's Residual Functional Capacity finding.

A.   Judge Laverdure's Residual Functional Capacity Determination

Plaintiff's motion contains many challenges to Judge Laverdure's assessment of her Residual Functional Capacity.  For the most part, her challenges focus on the Judge's failure to incorporate her alleged need for frequent unscheduled rest breaks into his Residual Functional Capacity assessment.  She alleges that the Judge reached his Residual Functional Capacity finding by improperly ignoring and/or rejecting her testimony regarding the need for rest breaks and by improperly rejecting her treating physician's opinion that she needed such breaks.  She also alleges that a Residual Functional Capacity finding that does not include a need for unscheduled rest breaks is not supported by substantial evidence in the record.

In addition to these substantive arguments, plaintiff's motion contains a technical argument that Judge Laverdure's decision does not comply with Social Security Ruling 96-7p.  We turn first to plaintiff's substantive arguments.

(i)     Alleged Need for Unscheduled Rest Breaks

Whether or not plaintiff truly has a need for frequent unscheduled rest breaks is a question that is answered inconsistently by the various informational sources compiled in the administrative transcript before this court.  Clearly plaintiff and her lawyer believe that she has such a need.  Her treating physician, Dr. Pickett, has repeatedly stated that plaintiff needs frequent rest breaks.  On the other hand, other medical evaluations included in the transcript, prepared by  Dr. Holly Kelly and a state agency physician, and a careful examination of plaintiff's testimony and other documents regarding the extent of her daily activities, strongly suggest otherwise.

We first examine plaintiff's testimony at the hearing before Judge Laverdure. The most relevant portions of plaintiff's testimony are transcribed below:

> Q: Now, in a given day, in an ordinary day, would you run us through a typical day from the time you get up until the time you go to bed?  But let's break it into pieces.  What time do you get up?
>
> A: I usually get up between -- about 6:30 a.m.  Get up and wake my son up.  My daughter's already up, she's going off to school.  I help my son with his breakfast, make his lunch.  He is picked up to go to school.  Then I try to do a load of laundry a day so that it doesn't get overwhelming.  And then, you know, I kind of, you know, maybe I -- housework-wise, I try to do -- like I'll vacuum one day, I'll sweep one day.  So maybe I do a household task and, you know, if I have a couple errands to do.  I might visit my mom.  I try to take a walk every other day between 30 and 40 minutes.  I don't go to the physical therapist anymore, but I still do the exercises at home that they've done, so I try to do that.  And you know, I am taking the class, the computer class, so that's two days a week for about an hour and a half maybe I'm there.  So I have that.  And then, you know, then I have to pick up the kids from -- well, pick up my daughter and my son from school.  Come home, kind of sit around and talk to them, see what's going on, then get their homework going.  If they need help, I help them with their homework.  You know, and then it's dinnertime.  Sometimes the kids help me with dinner, depending on what

we're doing.  We have dinner and then, you know, I usually sit down and read or watch TV or, you know, we might play a game or something.

Q: During the course of the day, do you need to rest?

A: You know, I do, you know, like I say, I watch more TV than I like to, so I do, you know, sit down or --

Q: Do you find it's necessary to sit down or lay down on --

A: Yeah.  If I can sit down and put my feet up, you know, on the couch, that's like good rest for me.  I –

Q: [Inaudible]

A: -- doze off for a few minutes.

Q: Do you do that every day?

A: I would say yeah.

Q: Do you do it in the morning or the afternoon or when?

A: More so in the afternoon.

Social Security Administration Offices of Hearings and Appeals, Transcript of February 11, 2004 Hearing ("Hearing Transcript"), pp. 13-14; AT, pp. 355-56.

Q: If you put in an active day as you described, running errands, driving, maybe even doing housework, do you have to take breaks just when you need to stop or lay down or sit or do anything else to relieve the back?

A: Yeah, I'll, you know, I'll do something.  And like if I've done errands, then I come home and I'll sit down and relax and read a book or, you know.

Q: And how long would you need to do that?  If you had one of those actives [sic] days, would there be a number of times during the day when you would have to stop and -

A:  Three or four times, you know.  If I could take a break, you know, between 15 minutes to a half an hour, you know, if I could sit down with my feet up.

Q: Does the feet up help?

A: Yeah.

Q: Does you elevating that foot, even when you're seated doing something, help or does it only help if you're trying to relieve pain?  Can you work with your foot elevated?

A: I never tried that, never done that.

Q: But at some point you need to stop, elevate your foot, elevate your leg.

A: That's the best way for me to -- yeah.  If I'm going to rest I'll sit down on the couch or sit down on the bed with the pillows behind me with my feet up.  That's the best.

Q: And in an active day you may have to do something like that as many as four times during the day?

A: Yeah.  And then - yeah.  And then at the end of the day, like I say, after dinners over, the couch is mine.

Q: Okay.  And those breaks, those four breaks you take during the day, how long would you need to do that?

A: You know, between 15 minutes to half hour, you know, if nothing's goin on, you know, I'll stay there for an hour.

Hearing Transcript, pp.25-26; AT, pp. 367-68.

Later in the hearing, plaintiff's counsel posed the following hypothetical to vocational expert Robert Raschke:

Atty: If even under the sit/stand option at will, would that allow for breaks, unscheduled breaks of up to 15 minutes to a half an hour up to four times a day?

VE: Generally not.  I mean it would, you know, according to labor regulations everybody gets a 10 to 15 minutes break, morning and afternoon and a half hour to an hour lunch break, depending upon the employer.  But if you're talking about unscheduled ones where the person's going to be away from the workplace as long as up to half an hour a couple of times a day, no.

Atty: So that would undermine even the light with the sit/stand option?

VE: Sure.  It wouldn't be --

ALJ: I think it would rule out all work on a --

VE: Yes, it would.

ALJ:  -- regular basis probably.

VE: It wouldn't be a productive pace.

ALJ: Yeah.  Under those kinds of circumstances, I don't think there's any issue about that, because --

Atty: Right.

ALJ: -- that much absence from the work station basically --

Atty: Yeah.

ALJ: rules out all work.

Hearing Transcript, pp. 36-37; AT, pp. 378-79.

Plaintiff's counsel contends that Judge Laverdure rejected plaintiff's testimony about the severity of her symptoms – and that any such rejection by an ALJ must be

14

supported by clear and convincing evidence.[4]  Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996).   We conclude, however, that plaintiff's counsel has mischaracterized the central thrust of Judge Laverdure's reasoning.

Plaintiff's counsel specifically focuses on the issue of unscheduled rest breaks, arguing that Judge Laverdure's RFC finding improperly ignores plaintiff's testimony that she needed up to four unscheduled rest breaks a day.  The problem with this argument is that plaintiff did not testify that she needed four unscheduled rest breaks a day.

In fact, the distinction between 'unscheduled' and 'scheduled' rest breaks first surfaced during plaintiff's counsel's hypothetical to the vocational expert.  Plaintiff's testimony was that, on an average "active" day, she might rest for fifteen minutes to a half-hour three or four times.  Nothing in her testimony suggests that, if at work, she could not rest during scheduled breaks.

In other words, we think that there is some space between plaintiff's testimony and her counsel's hypothetical.  It is not clear why plaintiff's scheduled rest breaks (i.e. the two fifteen minute breaks and half-hour to hour lunch breaks to which plaintiff is entitled under the pertinent labor regulations) could not accommodate most -- if not all -- of her need for rest breaks, particularly if she was performing 'light' work.

Accordingly, when we focus on plaintiff's testimony, it is not at all clear that Judge Laverdure "rejected" that testimony.  Instead, he appears to have concluded

---

[4]

In her reply, plaintiff argues that where there is no evidence of malingering, an ALJ's findings supporting his rejection of subjective pain testimony must be "clear and convincing".  Reply, p. 6. In contrast, the government's opposition suggests that the ALJ must only make 'specific findings' that are supported by substantial evidence in the record to properly reject a claimant's subjective pain testimony.

Because we believe that Judge Laverdure's findings in support of his rejection of plaintiff's testimony meet the higher 'clear and convincing' standard, we assume, without deciding, that that standard applies.

that, at least when she was not answering transparently leading questions, she was trying to be truthful and was generally describing accurately the extent to which and the circumstances under which her medical condition caused her to experience pain. With substantial evidentiary justification, Judge Laverdure perceived that plaintiff's testimony on these subjects was in some measure inconsistent – but that, considered in its entirety and viewed objectively, that testimony's essential message was that plaintiff could engage in at least light activities for substantial periods of time as long as her routine included rest breaks.

Viewing Judge Laverdure's reasoning in this way, we cannot conclude that he "rejected" or refused to credit plaintiff's testimony about her subjective symptoms. Instead, as we have indicated, it appears to us that the judge essentially credited plaintiff's testimony about how she felt – but rejected her conclusion that how she felt made it impossible for her to work at any reasonably accessible job. It follows that Judge Laverdure was not constrained to identify clear and convincing evidence that plaintiff's account of her symptoms was incredible.

But even if that standard were applied, Judge Laverdure's decision would withstand plaintiff's attack. Judge Laverdure pointed to several kinds of evidence in the record that contradicted an assertion that the extent of plaintiff's symptoms would prevent her from doing any job for which she was qualified. That evidence included: (1) plaintiff's testimony was inconsistent with the medical evidence (including, most significantly, the report prepared by Dr. Holly Kelly, and the assessment prepared by State Agency medical advisors), (2) plaintiff initially stated that her lower back pain was not aggravated by her December 2001 slip and fall, and (3) plaintiff's testimony is inconsistent with the extent of her daily activities.[5]

---

[5]

Judge Laverdure also found that plaintiff mis-perceived the issue of disability. Plaintiff argues that Judge Laverdure "apparently gave weight to the finding that plaintiff misperceived the issue of disability without explaining how that factor would bear on credibility." Plaintiff's Motion, p. 7.

1    We find Judge Laverdure's findings both clear and convincing.  The report

2  prepared by Dr. Kelly, who examined plaintiff in October of 2003, found that plaintiff

3  had a number of physical limitations -- but did not find that plaintiff needed frequent

4  rest breaks.  Her opinion clearly contemplates plaintiff working at a job.[6]  The state

5  agency physician's separate assessment opines that plaintiff has a Residual Functional

6  Capacity to perform light work.  This assessment states that plaintiff can stand and/or

7  walk about six hours in an eight-hour work day, and can sit for about six hours in an

8  eight hour workday with normal breaks.  We also find that the discrepancy in

9

10

11

12

---

Plaintiff further contends that Judge Laverdure improperly discounted her credibility based on that finding.

   The pertinent statement from Judge Laverdure's decision reads as follows:  "to this extent [i.e., to the extent that plaintiff claims that she cannot perform any work], I find that claimant perceives the issue of disability in the context of the ability to perform her past work as a grocery clerk and produce stocker that she has performed for the last 28 years."  ALJ Decision, p.4; AT, p. 38.

   We do not view the judge's statement as a 'finding'.  Rather, we believe it is an explanation -- an explanation of how he could find plaintiff and her testimony 'generally credible' and yet not find that she is disabled.  In other words, we believe Judge Laverdure is stating (speaking in his voice) something akin to the  following:  'plaintiff genuinely believes that she is disabled, and generally I find that she and her testimony are credible - but I don't think that her belief that she is disabled within the meaning of the Social Security Act is credible because she mistakenly conflates the idea of being disabled with not being able to perform her past job.'

   In any case, we do not rely upon Judge Laverdure's view that plaintiff 'misperceives the issue of disability' to support our determination that there was substantial evidentiary support for the judge's conclusion that plaintiff's testimony about how her medical condition affected her was not inconsistent with a finding that she was not disabled from performing any relevant work.

   [6]

   In her reply, plaintiff argues that Dr. Kelly's 'RFC report' was based only on objective measures and not on plaintiff's 'reported symptomology'.  Reply, p. 6, n.4.  We note that although the form referenced by plaintiff, AT at 299-302, did not include a category that would naturally encompass a rest-break type limitation, Dr. Kelly also wrote a comprehensive orthopedic evaluation that concludes with a textual functional assessment/medical source statement that describes what plaintiff could reasonably be expected to do.  We see no reason why a rest-break limitation would not have been included (if warranted by the evaluation) in this section.

plaintiff's positions regarding the effect of her fall at work on her back condition somewhat diminished her credibility.[7]

_____

[7]

Plaintiff argues that Judge Laverdure should not have drawn a negative inference about her credibility from the change in her position regarding the effect of her fall at work. She insists that her "consistent account" has been that her existing back pain was aggravated by her fall at work. Plaintiff's Motion, pp. 6-7. In contrast, defendant contends that plaintiff originally alleged that her low back pain and radiculopathy were not work-related, and that it was not until May 14, 2002, that plaintiff alleged that her low back pain was aggravated by her December 2001 slip and fall.

The relevant statement from Judge Laverdure's decision, in context, is as follows: "I find that claimant perceives the issue of disability in the context of the ability to perform her past work as a grocery clerk and produce stocker that she has performed for the last 28 years. In that context, I also note Dr. Ramsey's observation that claimant originally alleged that her low back pain and radiculopathy was not work-related. However, on May 14, 2002, claimant alleged that her low back pain was secondary to the December 2001 fall." ALJ Decision, p. 4; AT, p. 38.

After carefully reviewing the portions of the record which the parties cite in their papers as supporting their respective positions, we find that both sides are overreaching.

Plaintiff first cites an assessment signed on April 8, 2002, by Dr. Ramsey, an orthopedic surgeon. The assessment appears to have been completed in the context of plaintiff's workers compensation claim.

In this assessment, Dr. Ramsey describes the "history *as provided by the patient* . . She describes a fall at work, landing on the left hip or buttock area on December 11, 2001. She indicates that this aggravated pre-existing low back pain and initiated left sciatic complaints." Ramsey Assessment, p. 1; AT, p. 169. The letter goes on to say, "Based on the history she provided and limited medical records, which appear to support this history, I would consider it medically probable that she has aggravated a preexistent back problem and created related sciatic complaints as a result of her industrial fall in December 2001. This is superimposed on the past history of nonradiating low back pain, not known to be work related. **Review of previous medical data would be desirable to confirm this impression**." Ramsey Assessment, p. 4; AT, p. 172 (Emphasis added).

Dr. Ramsey, however, performed a second assessment of plaintiff in June of 2002. **Defendant** cites this assessment in support of her position. In this assessment, Dr. Ramsey summarizes additional medical records that he has received and reviewed regarding plaintiff. Following this summary, Dr. Ramsey states that, "**The above information contradicts the history previously received.** Clearly, Dr. Talcott describes her recent fall in December 2001 as causing no change in her pre-existing complaints. Prior to this time, her problem had been indicated as non-industrially related . . . It is somewhat curious that a slip and fall aggravating pain is now claimed, whereas at the time or shortly thereafter, her treating doctor thought it was not particularly aggravating.

Such a history is certainly consistent with an aggravating incident, but I would certainly expect some evidence of the aggravation to be recognized shortly after it occurred. Otherwise, I would have to conclude that this incident was not particularly aggravating and that her problem represents a long-standing ongoing problem not known to be related to work." Second Ramsey Assessment, pp. 2-3; AT, pp. 167-68.

Finally, we find that plaintiff's description of her daily activities is inconsistent with the notion that she cannot routinely perform a light day's work. Plaintiff's typical day encompasses getting up at 6:30 a.m., preparing breakfast for her son and dinner for her family (with occasional help), doing laundry, performing some housework, taking a thirty-forty minute walk (every other day), performing physical therapy exercises, running errands, picking up both her children from school, and,

---

Besides Dr. Ramsey's first assessment, plaintiff cites only an RFC assessment dated in December of 2002 (in connection with plaintiff's application for Social Security benefits). Although the assessment does describe plaintiff's medical history as 'undocumented low back pain aggravated by December 2001 fall" there is nothing in the assessment whichundermines the notion that plaintiff and her treating physician initially described the fall as NOT aggravating her back condition. Indeed, later on in the assessment the evaluator notes, "Initially claimant and TP [treating physician] submitted paperwork for nonindustrial injury and disability, then changed their history to suggest industrial cause (Ramsey MD 6/02), which erodes their credibility somewhat." RFC Assessment, p. 6; AT, p. 260.

Defendant also cites a "Doctor's First Report of Occupational Injury or Illness" which describes plaintiff's slip and fall as causing/aggravating plaintiff's leg and lower back pain. It is dated May 14, 2002. Despite the title of this document (i.e., Doctor's First Report) we located another 'Doctor's First Report of Occupational Injury or Illness' -- this one dated in February of 2002. AT, at 125. The February, 2002, report includes statements from plaintiff describing her left sciatica pain as constant since the December11, 2001, fall and her lower back pain as worse since the fall.

From what we can ascertain from the record, plaintiff first complained that the fall aggravated her back and leg pain in February of 2002 - two months after the fall. Given this significant lapse in time, we do not believe that it was unreasonable for Judge Laverdure to draw a negative inference regarding plaintiff's credibility from the discrepancy between her and her treating physician's initial position regarding the impact of the fall and their later position.

On the other hand, Judge Laverdure's statement that "on May 14, 2002, claimant alleged that her low back pain was secondary to the December 2001 fall" implies that he may have believed that plaintiff did not change her position until May of 2002. If this was the case, the judge probably drew a stronger inference than warranted about plaintiff's (lack of) credibility.

In sum, we believe that the change in plaintiff's position about the effect of her fall on her back condition could lend some modest support to a finding that plaintiff was in some measure exaggerating the severity of her symptoms. We emphasize, however, that regardless of whether Judge Laverdure understood the change in plaintiff's position to have first occurred in February or in May, it is unlikely that he ascribed appreciable significance to that change when he determined plaintiff's RFC. We also emphasize that there was ample support in the record for the way Judge Laverdure treated plaintiff's testimony without ascribing any significance to the change in her position or when that change occurred.

1    sometimes, visiting her mother, taking a computer class, and helping her children
2    with their homework.

3        In sum, we find that Judge Laverdure's assessment of plaintiff's Residual
4    Functional Capacity is largely consistent with her testimony.  To the extent it rejects
5    any of plaintiff's testimony, we find that that rejection is supported by clear and
6    convincing reasons.

7    ///

8    ///

9        Plaintiff next argues that Judge Laverdure's finding of plaintiff's Residual
10    Functional Capacity improperly ignored or rejected an opinion expressed in June of
11    2003 by her treating physician, Dr. Pickett.  In June, 2003, Dr. Pickett noted on a one-
12    page form titled 'Treating Physician's Report of Disability Status' that plaintiff's job
13    performance limitations included a need for "frequent rest periods." AT, p. 270.[8]  The
14    Disability Status form does not explain the bases for Dr. Pickett's opinion regarding
15    plaintiff's limitations, including the rest break limitation. On the form, Dr. Pickett also
16    opines that plaintiff is currently able to perform light job duties if they are available,
17    provided that the physical limitations described on the form are accommodated.

18        Plaintiff insists that Judge Laverdure's decision improperly discounted the
19    opinion expressed by Dr. Pickett on the June 2003 Disability Status form that her
20    physical limitations included a need for frequent rest breaks.  Plaintiff appears to
21    make two arguments with regard to Dr. Pickett's opinion:  first, that Judge Laverdure
22    failed to either 'credit or discount' the opinion, and second, if Judge Laverdure's

23

24    ──────────────

25    [8]

26        Dr. Pickett does not state that plaintiff's need to rest frequently could be accommodated only by
    unscheduled rest breaks.  Therefore, as with plaintiff's hearing testimony, we believe that Judge
27    Laverdure's Residual Functional Capacity finding can be interpreted as largely consistent with Dr.
    Pickett's opinion.  However, we will assume, for the purposes of our analysis, that Dr. Pickett's June
28    2003 report envisioned at least some unscheduled rest breaks.

1  decision is interpreted as rejecting Dr. Pickett's opinion, that the judge's decision

2  failed to give adequate reasons for the rejection.

3      In response to plaintiff's first argument, defendant contends that Judge

4  Laverdure acknowledged -- and rejected -- Dr. Pickett's opinion that plaintiff needed

5  frequent <u>un</u>scheduled rest breaks.  We agree with defendant.

6      First, we note that in the section of his decision entitled "Evaluation of the

7  Evidence", Judge Laverdure expressly acknowledges Dr. Pickett's rest break

8  limitation: "J.C. Pickett, M.D. has treated claimant since January 2002 and completed

9  multiple disability forms indicating temporary disability.  Exhibit 11F.  However, Dr.

10  Pickett did not specify functional limitations until June 5, 2003, when he stated that

11  claimant could lift up to 10 pounds, carry up to 15 pounds with preclusion from

12  bending, climbing and kneeling **and the need for frequent rest breaks**."  Exhibit

13  11F/5.  (Emphasis added).

14      In the section of his decision explaining his RFC determination, Judge

15  Laverdure does not explicitly mention Dr. Pickett's rest break limitation, but he does

16  state that he "gives little weight to Dr. Pickett's various opinions indicating temporary

17  disability as they were provided within the context of workers' compensation and, as

18  such, address issues of causation and the ability to return to **past work**.  In addition,

19  until the June 2003 assessment, Dr. Pickett's disability opinions are vocational in

20  nature and do not specify functional capacities."   ALJ Decision, p.4 (emphasis

21  added);  AT, p. 38.  Judge Laverdure also notes that, "Dr. Pickett's June 2003 opined

22  functional limitations are generally consistent with the above RFC."  ALJ Decision,

23  p. 4; AT, p. 38.

24      In the Court's view, Judge Laverdure's decision acknowledges Dr. Pickett's

25  opinion that plaintiff's physical limitations included a need for frequent rest breaks,

26  and rejects that opinion to the extent it implies a need for frequent <u>un</u>scheduled rest

27  breaks.  <u>See</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747 (9th Cir. 1989) (administrative law

28

judge is not required to recite any magic words or incantation to reject a doctor's opinion; reviewing court may draw inferences from administrative law judge's opinion).[9]   Accordingly, we reject plaintiff's argument that the judge's decision fails to sufficiently 'credit or discount' Dr. Pickett's opinion.

As mentioned above, plaintiff makes the alternative argument that Judge Laverdure's decision fails to give sufficient reasons for rejecting Dr. Pickett's 'rest break' limitation.   Defendant disagrees, contending that Judge Laverdure properly rejected that opinion.

As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.   Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).   Although the treating physician's opinion is given deference, an administrative law judge may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the administrative law judge makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."   Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

We find that the combination of Dr. Kelly's opinion, the state agency physician's assessment, the conclusory nature of Dr. Pickett's opinion, the fact that it clearly was directed at a 'prior-job' inquiry, and the extent of plaintiff's daily activities constitute substantial evidence supporting Judge Laverdure's rejection of Dr. Pickett's 'rest-break' opinion.

Accordingly, we reject plaintiff's arguments to the contrary.

---

[9]

"It is true that the ALJ did not recite the magic words, 'I reject Dr. Fox's opinion about the onset date because . . .' But our cases do not require such an incantation.   As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.   It is proper for us to read the paragraph discussing Dr. Pont's findings and opinion, and draw inferences relevant to Dr. Fox's findings and opinion, if those inferences are there to be drawn."   Magallenes, 881 F.2d at 755.

1   ///

2   ///

3        Finally, plaintiff argues that Judge Laverdure's residual functional capacity

4   finding was not supported by substantial evidence.  We disagree.  We find that, when

5   considered together, the evidence discussed above, including Dr. Kelly's evaluation,

6   the assessment of the state agency medical advisors, the extent of plaintiff's daily

7   activities, and a careful review of plaintiff's hearing testimony, do constitute

8   substantial evidence supporting Judge Laverdure's residual functional capacity

9   assessment.[10]

10                        (ii)  Compliance with Social Security Ruling 96-7p

11        In addition to making the substantive arguments addressed above, plaintiff also

12   argues that Judge Laverdure "avoided" the process set out in Social Security Ruling

13   ("SSR") 96-7p by omitting the first step of the analysis and by failing to address

14   factors other than plaintiff's activities in the second step.  Defendant's brief does not

15   respond to this argument.

16        SSR 96-7p clarifies whether an ALJ's evaluation of a claimant's symptoms,

17   including pain, requires a finding about the credibility of the individual's statements

18   _____

[10]

19     Plaintiff also alleges that Judge Laverdure's residual functional capacity finding was improperly

20   reached in that the judge did not acknowledge and apparently did not consider her work and
     earnings history.  We disagree.  Judge Laverdure did acknowledge plaintiff's work and earnings

21   history.  On page three of his decision, Judge Laverdure describes plaintiff as "a 47-year old
     individual with a high school education and past relevant work as a produce stocker and grocery

22   clerk during the last 15 years," and on page four, he refers to plaintiff's "past work as a grocery clerk
     and produce stocker that she has performed for the last 28 years."  ALJ Decision, pp. 3, 4; AT, pp.

23   37-38.  ("By published regulations, the Commissioner has defined 'past relevant work' as a work
     experience which was done within the last 15 years, lasted long enough for an individual to learn

24   to do it, and constituted substantial gainful activity."  Harvey L. McCormick, *Social Security Claims*

25   *and Procedures* (5th ed. 1999, Supp. 2005), § 2:53.)

26      Judge Laverdure clearly acknowledged that plaintiff had worked consistently over a very
     substantial period of time.  We see no reason to believe that he did not consider this fact when

27   assessing her credibility.

28

about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms, and stresses the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination. SSR 96-7p, 1996 WL 374186 (S.S.A.), p.1.

The determination under SSR 96-7p involves a two-step analysis. See SSR 96-7p. In the first step, known in the Ninth Circuit as the Cotton test, the administrative law judge determines whether the claimant has produced objective medical evidence of an impairment and has shown that the impairment could reasonably be expected to produce some degree of the alleged symptoms (i.e. pain). See Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citing Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). If the administrative law judge determines that there is insufficient medical evidence of an impairment, or that the impairment could not reasonably be expected to produce some degree of the alleged pain or other symptoms, then the symptom or combination of symptoms cannot be the basis for a finding of disability. If the claimant does not satisfy the first step, the administrative law judge is not required to proceed to step two of the analysis -- in other words, it is unnecessary for him to make a finding regarding the credibility of the claimant's statements.

If the first step is satisfied, and there is no evidence of malingering, the administrative law judge must make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects. He may reject the claimant's testimony regarding the severity of symptoms only if he makes specific findings justifying his decision.[11]

An administrative law judge is not required to believe every allegation of disabling pain. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). In the second step

---

[11]

As stated above, we assume, without deciding, that these findings must be clear and convincing. See Note 4.

of the analysis, the administrative law judge *may* consider factors such as inconsistencies in the claimant's testimony, the extent of the claimant's daily activities, any inadequately explained failure to seek treatment or to follow a prescribed course of treatment, or other methods of credibility determination. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).[12]   In addition, the administrative law judge *must* consider the factors set out in SSR 96-7p when evaluating the credibility of symptom testimoy. See id. These factors include: (i) the individual's daily activities; (ii) the location, duration, frequency, and intensity of the individual's pain and other symptoms; (iii) factors that precipitate and aggravate the symptoms; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (vi) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, p.3, citing 20 C.F.R. §§ 404.1529(c) and 416.929(c).

Plaintiff's argument breaks down into two sub-parts. First, plaintiff argues that Judge Laverdure improperly omitted the first step of the SSR 96-7p analysis. Second, plaintiff argues that the judge's step-two analysis improperly failed to address the SSR 96-7p factors other than plaintiff's activities.

(a)   Judge Laverdure's Alleged Omission of the First Step of the SSR 96-7p analysis

As described above, in the first step of the SSR 96-7p analysis, the administrative law judge is required to determine whether the claimant has produced

---

[12]

  Bunnell refers to SSR 88-13 rather than SSR 96-7p.  SSR 88-13 has since been superseded, first by SSR 95-5p and then by SSR 96-7p. See Brider v. Apfel, 18 F.Supp.2d 900, 906 (N.D. Ill. 1998); Calehuff v. Halter, 11 Fed. Appx.811 (9th Cir. 2001) (unpublished).

objective medical evidence of an impairment that could reasonably be expected to produce some degree of the alleged symptoms (the Cotton test). Plaintiff argues that Judge Laverdure improperly failed to perform this step of the analysis.

Although Judge Laverdure did not explicitly find that plaintiff "produced objective medical evidence of an impairment that could reasonably be expected to produce some degree of the alleged symptoms," it is clear that he implicitly made such a finding. As explained above, SSR 96-7p did not require the judge to assess the credibility of plaintiff's testimony unless he found that the first step of the Cotton test had been satisfied. But Judge Laverdure did, in fact, make such an assessment: "Claimant's testimony is generally credible but her allegations regarding inability to perform any work are inconsistent with the medical evidence and opinions supporting an RFC for a range of work at the light exertional level and her activities of daily living. In so **finding**, I note that . . ." ALJ Decision, p. 4; AT, p. 38 (emphasis added); "Findings (6.) Claimant's subjective complaints, as discussed above, are generally credible, but not to the extent that they would conclusively establish a complete inability to perform any work." ALJ Decision, p. 5; AT, p. 39. In addition, we observe that, at step two of the five-step evaluative disability analysis, Judge Laverdure found that plaintiff had a severe medical impairment.[13]

We interpret Judge Laverdure's decision as finding that plaintiff satisfied the Cotton test and reject plaintiff's arguments to the contrary.

---

[13]

   Plaintiff has not directed the Court to any legal authority requiring an administrative law judge to make an explicit finding on the first step of the SSR 96-7p process. Moreover, our research has revealed two cases in which district courts have found an implicit finding sufficient. See Powell v. Massanari, 2001 WL 1563712, *3 (N.D. Ca. 2001); Brider v. Apfel, 18 F.Supp.2d 900, 907, n.6 (N.D. Ill. 1998).

26

(b) Judge Laverdure's Alleged Failure to Consider
the Second Step Factors Other than Plaintiff's
Activities

As explained above, there are seven factors that an administrative law judge must consider in the second-step of the SSR 96-7p analysis.  Plaintiff argues that Judge Laverdure improperly failed to address six of the seven factors (the exception being plaintiff's daily activities).

Although it is clear that an administrative law judge must <u>consider</u> all SSR 96-7p factors, plaintiff cites no authority for the proposition that he must document this consideration by separately analyzing, in writing, each of the factors.  We have found one case that directly addresses this issue, <u>Powell v. Massanari</u>, 2001 WL 1563712 (N.D. Ca. 2001) (Chesney, J.).  In <u>Powell</u>, Judge Chesney specifically found that although the administrative law judge is required to consider the various factors, he is not required to separately discuss them.

We have reviewed numerous additional opinions addressing the SSR 96-7p process issued by the Ninth Circuit and by district courts falling within the Ninth Circuit's jurisdiction.  The cases all state that the administrative law judge must consider the SSR 96-7p factors, but do <u>not</u> state that he must separately address them.  <u>See</u>, <u>e.g.</u>, <u>Smolen v. Chater</u>, 80 F.3d 1273  (9th Cir. 1996); <u>Vick v. Commissioner</u>, 57 F.Supp.2d 1077 (D.Or. 1999); <u>Hixson v. Apfel</u>, 2000 WL 1897293 (N.D. Ca. 2000).

In sum, plaintiff has not cited, nor could we find, any authority within the Ninth Circuit stating that the administrative law judge must separately analyze all seven factors.  In these circumstances, we must decline to fault him for not doing so.

Moreover, it is apparent that Judge Laverdure did consider the SSR 96-7p factors.  Indeed, the section of his decision titled, "Evaluation of the Evidence" includes a description of the location (low back and left leg) and duration/frequency (chronic) of plaintiff's pain, the activities that plaintiff described as aggravating that pain (i.e. too much standing, sitting, walking, etc.), the type of medication she was on

(Darcovet) and the fact that she suffered no side effects from that medication, other measures she had taken to alleviate the pain (heating pads) and other treatment both had (physical therapy, epidural injections) and considered (surgery).

Accordingly, we conclude that Judge Laverdure did not improperly 'avoid' the process set forth in SSR 96-7p.

### B.    Appeals Council Decision

As mentioned above, in addition to challenging Judge Laverdure's Residual Functional Capacity finding, plaintiff also challenges the Appeals Council decision upholding that finding.  More specifically, plaintiff argues that the Appeal Council improperly failed to consider an August 2004 work release prepared by Dr. Pickett, plaintiff's treating physician.

The August 2004 work release is essentially a form report listing the medical conditions under which Dr. Pickett believed it appropriate to release plaintiff to work. These conditions include a need for "frequent rest periods" and a restriction that plaintiff work no more than twenty hours per week.

Plaintiff's argument regarding the August 2004 work release consists of three sub-parts:  (i) the Appeals Council did not consider or acknowledge receipt of this 'report'; (ii) the Appeals Council did not provide an adequate explanation for rejecting the report; and (iii) in light of the report, the Appeals Council improperly found that Judge Laverdure's residual functional capacity finding was supported by substantial evidence.

Plaintiff's first argument, that the Appeals Council did not consider the work release, is not well-founded. The Appeals Council's decision denying review contains a list of evidence that it considered -- and that list contains Dr. Pickett's August 2004 work release.  AT, at 11-12, 14.  Therefore, it is clear that the Appeals Council considered the work release.

1    Plaintiff next argues that the Appeals Council did not sufficiently set forth its

2    reasons for rejecting the opinion expressed in the work release.  Defendant contends

3    that "the Appeals Council is not required to state its rationale for denying a request

4    for review of the ALJ's decision."  Opposition, p.7.   Defendant cites 20 C.F.R.

5    section 404.970(b) in support of this proposition:

6    20 C.F.R. § 404.970(b) reads:

7         If new and material evidence is submitted, the Appeals Council
     shall consider the additional evidence **only where it relates to the**
8    **period on or before the date of the administrative law judge hearing**
     **decision.**   The Appeals Council shall evaluate the entire record
9    including the new and material evidence submitted if it relates to the
     period on or before the date of the administrative law judge hearing
10   decision.  It will then review the case if it finds that the administrative
     law judge's action, findings, or conclusion is contrary to the weight of
11   the evidence currently of record.

12

13   20 C.F.R. § 404.970(b) (emphasis added).

14

15   After carefully reviewing Regulation 404.970(b) and other pertinent legal

16   authorities on this topic, we conclude that there are certain circumstances in which

17   the Appeals Council must state its rationale when it denies a request for review.  The

18   pertinent authorities are not entirely consistent -- but we believe that the relevant

19   standard is most accurately stated as follows:  when the Appeals Council receives and

20   considers new evidence from a treating physician, the Council must set forth 'specific,

21   legitimate reasons' for rejecting that opinion if (and only if) the following conditions

22   are met: (i) the evidence pertains to the period on or before the date of the

23   administrative law judge's decision; (ii) the evidence is new and material; and (iii) the

24   administrative law judge's decision is contrary to the record when all evidence,

25   including the new and material evidence, is considered.  See generally Ramirez v.

26   Shalala, 8 F.3d 1449 (9th Cir. 1993); 20 C.F.R. § 404.970(b).

27

28

Dr. Pickett's August 2004 work release does not appear to satisfy the above conditions. First, the report appears to pertain to a period after the date of Judge Laverdure's decision. Second, the 'frequent rest break' limitation specified in the work release is not a new opinion -- as discussed above, Dr. Pickett already expressed that opinion in June of 2003. Finally, we find that the evidence relied upon by Judge Laverdure in making his residual functional capacity assessment still constitutes substantial evidence in support of his decision, even when considered in conjunction with Dr. Pickett's August 2004 work release.

Because we find that the conditions that trigger the requirement that the Appeals Council set forth 'specific, legitimate reasons' for rejecting Dr. Pickett's August 2004 work release 'opinion' are not met, we find that the Appeals Council was not required to set forth in detail its reasons for rejecting that opinion.

Plaintiff's final argument on this issue is that, in light of the restrictions contained in Dr. Pickett's August 2004 work release, the Appeals Council should not have found that Judge Laverdure's residual functional capacity finding was supported by substantial evidence. As stated above, we disagree with this assertion. We find that Judge Laverdure's residual functional capacity finding was supported by substantial evidence, even when considered in conjunction with the August 2004 work release.

Accordingly, we deny plaintiff's challenge to the Appeals Council's decision.

3.   Propriety of ALJ's Step Five Finding That a Significant Number of Jobs Exist in the National Economy that Plaintiff Can Perform

In the fourth step of the five-step sequential process, Judge Laverdure found that plaintiff was unable to perform her past relevant work as a produce stocker or grocery clerk. In the fifth step of the analysis, however, the Judge found that there were a significant number of other jobs in the national economy that plaintiff could perform. Plaintiff's counsel now disputes the propriety of the ALJ's step-five finding.

30

1    In step five of the disability analysis, the burden of proof shifts to the
2    Commissioner to demonstrate that the claimant retains residual functional capacity
3    to perform a significant number of other jobs in the national economy that are
4    consistent with the claimant's impairments and vocational factors such as age,
5    education and work experience.  The Secretary has developed a series of tables
6    known as "grids" for use in determining disability.  The grids take into account
7    various vocational factors, such as age, education and work experience, and the
8    claimant's residual functional capacity.  See Razey v. Heckler, 785 F.2d 1426,
9    amended, 794 F.2d 1348 (9th Cir. 1986).

10    Plaintiff's counsel argues that the ALJ improperly reached his step five finding
11    that plaintiff could perform a significant number of jobs in the national economy
12    because the ALJ relied on the medical-vocational guidelines (the grids) and not on
13    testimony from a vocational expert.  For reasons we explain below, we disagree.

14    At plaintiff's hearing, when Judge Laverdure reached the fifth step of the
15    sequential process, the Judge asked plaintiff's counsel whether he would **stipulate**
16    that a person with the residual functional capacity that he (Judge Laverdure)
17    ultimately found plaintiff to possess could perform a significant number of jobs in the
18    national economy.  As Judge Laverdure explained, plaintiff's counsel's  stipulation
19    would obviate the need for expert vocational testimony on this issue.  February 11,
20    2004, Administrative Hearing Transcript, pp. 29-30;  AT, pp. 371-72. Plaintiff's
21    counsel agreed to so stipulate.  Hearing Transcript, p. 31; AT, p. 373.

22    As we have upheld Judge Laverdure's assessment of plaintiff's residual
23    functional capacity under the pertinent legal standards, and because plaintiff's counsel
24    **stipulated** that a person with that residual functional capacity could perform a
25    significant number of jobs in the national economy  -- and did not insist on expert
26    vocational testimony on this issue -- we must decline to find that the Commissioner

27
28

failed to meet her burden of proof as to step five or that Judge Laverdure's finding as to this step was otherwise improperly reached.

Plaintiff's counsel also argues that although he stipulated that a person with the residual functional capacity described by the ALJ could perform a significant number of jobs in the national economy, he did not stipulate that plaintiff could perform such jobs.  Rather, plaintiff's counsel posed a hypothetical to the expert, describing an individual with the same residual functional capacity described in the ALJ's hypothetical who also needed to take up to four unscheduled rest breaks a day.  The vocational expert testified that the hypothetical person described by plaintiff's counsel would not be sufficiently productive  to successfully perform any job.  Hearing Transcript, pp. 36-37; AT, pp. 378-79.

Plaintiff's counsel argues that plaintiff's residual functional capacity is actually that of the individual described in his hypothetical.  He points out that neither the expert's vocational testimony nor a stipulation supports a step-five finding that a person with this residual functional capacity could perform a significant number of jobs in the national economy.

We have, however, upheld Judge Laverdure's assessment of plaintiff's residual functional capacity -- and that assessment does not include the unscheduled rest-break limitation of the individual described in counsel's hypothetical.  Therefore, the Judge's step-five finding does not need to be supported by evidence that the hypothetical person described by plaintiff's counsel could perform a significant number of jobs in the national economy.

Accordingly, we reject plaintiff's contention that the ALJ's step-five finding was improperly reached.

///

///

///

1  **V.      Conclusion**

2          For the reasons set forth above, the Court hereby DENIES plaintiff's motion

3  for remand, DENIES plaintiff's motion for summary judgment, and GRANTS

4  defendant's cross-motion for summary judgment.

5          IT IS SO ORDERED.

6

7  Dated:  March 13, 2006

8                                                        _____

9                                                        WAYNE D. BRAZIL
                                                         United States Magistrate Judge

10  Copies to:

11          All parties,
            WDB, Stats

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28